Shelly M. Damore, WSB No. 338337
E-mail: sdamore@hittandhiller.com
HITT HILLER MONFILS WILLIAMS LLP
411 SW 2nd Avenue, Suite 400
Portland, OR 97204
Telephone:  503-228-8870
Facsimile:   503-228-4250
  Of Attorneys for Plaintiff Al Dennis

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

TACOMA DIVISION

| | |
|---|---|
| **AL DENNIS,**<br>      Plaintiff,<br><br>  v.<br><br>**THE HERSHEY COMPANY, GREGORY JOHN PELL, THOMAS C SMUDA, BENJAMIN J STOFFEL, MICHAEL R WEST**<br><br>      Defendants. | Case No.<br><br>**COMPLAINT**<br><br>1. Race Discrimination – 42 USC 2000e<br>2. Race Discrimination - Constructive Discharge – 42 U.S.C. 2000e-2<br>3. Race Discrimination - Hostile Work Environment 42 U.S.C. 2000e-2<br>4. Race Discrimination - Retaliation<br>5. Disparate Treatment – RCW 49.60.180(3)<br>6. Race Discrimination – Hostile Work Environment – RCW 49.60.180(3)<br>7. Intentional Infliction of Emotional Distress |

Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.

This is an action arising under the laws of the United States of America, in

particular Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-2, and

the Revised Code of Washington 49.60.180(3).

1 – **COMPLAINT**

2.

The jurisdiction of this court is invoked pursuant to the provisions of Title VII, 42 U.S.C. 2000e-5 and 2000-e-2, and the general civil rights jurisdictional provisions of 28 U.S.C. 1343(a)(4).

3.

Claims also are stated under the Revised Code of Washington 49.60.180(3) against the individual defendants.

4.

The supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. 1367 over the State law claims which are so related to federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

5.

Venue is proper in the United States District Court for the Western District of Washington pursuant to 28 U.S.C. Section 1391(b).

6.

**ADMINISTRATIVE PREREQUISITES**

Plaintiff has complied with all the administrative prerequisites to action under Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-5 as follows:

7.

On or about April 18, 2011, Plaintiff timely filed a formal charge of discrimination with the Equal Employment Opportunity Commission. Plaintiff promptly and diligently accommodated all EEOC requests for information and fully cooperated in the agency's investigation of this matter.

2 – **COMPLAINT**

8.

Plaintiff has exhausted all available administrative remedies in accordance with the aforementioned statutes prior to instituting this Civil Action, and a Notice of Right to Sue was issued on November 27, 2012.

9.

## NATURE OF THE ACTION AND RELIEF SOUGHT

This is an employment racial discrimination case by an employee of Hershey's alleging a continuing series of discriminatory conduct against him because of his race and in retaliation for having complained about unlawful discrimination.

10.

This also is an action for race discrimination under the Revised Code of Washington 49.60.180(3) and for the common law claim of intentional infliction of emotional distress.

11.

Plaintiff seeks appropriate economic and non-economic damages against the individually named defendants and Hershey's as well as attorneys' fees and costs.

12.

## THE PARTIES

At all times material to this action, Alphonso Dennis ("Dennis"), Plaintiff, an African-American male, was and is a resident of the State of Washington, and was employed by Defendant Hershey's between October 2003 and December 2010.

13.

At all times material, defendant The Hershey Company ("Hershey's."), was and is an active domestic corporation registered in the state of Washington, doing business in Pierce County, Washington and employed in excess of fifteen (15) employees.

///

3 – COMPLAINT

14.

At all times material to this action, Defendant Gregg Pell ("Pell") was a resident of the State of Michigan. At all relevant times, Pell was a managerial employee of Defendant Hershey's and was the District Sales Manager.

15.

At all times material to this action, Defendant Tom Smuda ("Smuda") was a resident of the State of Pennsylvania. At all relevant times, Smuda was a managerial employee of Defendant Hershey's and was the Vice President of Field Sales.

16.

At all times material to this action, Defendant Ben Stoffel ("Stoffel") was a resident of the State of Ohio. At all relevant times, Stoffel was a managerial employee of Defendant Hershey's and was the South Area Sales Director.

17.

At all times material to this action, Defendant Mike West ("West") was a resident of the State of Minnesota. At all relevant times, West was a managerial employee of Defendant Hershey's and was the Area Sales Director.

18.

**FACTS**

Defendant Hershey's has maintained, acquiesced in the maintaining of, or failed to take appropriate required action to eliminate a general and consistent pattern and practice of racial discrimination.

19.

At all relevant times, all matters regarding compensation, terms, conditions, rights and privileges of Plaintiff's employment were governed and controlled by Defendant Hershey's.

///

**4 – COMPLAINT**

20.

Upon information and belief and at all relevant times, defendants Pell, Smuda, Stoffel and West were acting as the agents, servants and/or employees of Defendant Hershey's. Defendant Hershey's is therefore liable for the acts and omissions of the individual defendants pursuant to the principles of respondeat superior and actual and/or implied agency.

21.

Such pattern and practice has been consistently manifested for at least the two years preceding the filing of plaintiff's administrative complaint by the following acts and others:

22.

Plaintiff was subjected to routine harassment, humiliation and embarrassment at the hands of his immediate supervisors because of his race.

23.

Plaintiff worked full time and continuously for Defendant from October 2003 until December 2010

24.

Plaintiff was the Associate District Sales Manager ("ADM") for Hershey's and his immediate supervisor while he was in that position was Gregg Pell, District Sales Manager ("DSM").

25.

Pell and the South Area Sales Director (ASD), Ben Stoffel, asked Plaintiff in a private meeting to become the direct supervisor of another black employee, Roselyn Ratcliff. Pell and Stoffel had determined that Ratcliff needed to be fired as soon as possible, or "managed out" of the company. They told Plaintiff to do it to shield them from responsibility for the decision and a potential claim of race discrimination.

5 – **COMPLAINT**

26.

Plaintiff directly opposed Pell and Stoffel's request to terminate Ratcliff and told

them instead that he would manage Ratcliff, but without committing to terminate her.

Plaintiff stated that he would manage Ratcliff's employment "up or out" while "adhering

to all human resources protocol with integrity."

27.

In direct retaliation for refusing to fire another black employee, Ratcliff,

immediately, Plaintiff was belittled by both Stoffel and the Vice President of Field Sales,

who supervises the company's four ASDs, Tom Smuda. This began long and systemic

harassment by the Hershey's management team of Smuda, Pell and Stoffel throughout

Plaintiff's career there.

28.

Soon after Plaintiff's refusal to go along with Pell's discriminatory firing

practices, Plaintiff applied for a DSM position in Atlanta. Unfortunately, Stoffel was the

hiring ASD for that position and Plaintiff was denied the position.

29.

The Atlanta DSM position was given to a white female, Jill Winters, who had less

tenure, less academic qualifications, was a lower level employee (District Sales

Supervisor) and was less qualified than plaintiff.

30.

Plaintiff complained directly to the Director of Human Resources, Carolyn

Haskell about the clear discrimination in being denied the position of District Sales

Manager (DSM) in Atlanta by Stoffel.

31.

Haskell apologized to Plaintiff for the injustice of not having been hired for the Atlanta DSM position and she made a point of personally sitting in on Plaintiff's next interview for a DSM position in Seattle, Washington for which Plaintiff was hired.

32.

About 6 months after Plaintiff became the Seattle DSM, Smuda and the four ASDs conducted their quarterly "District Review." The location for the District Review alternated among the four Areas and the March 2007 meeting was scheduled for the West Area and in the Seattle District.

33.

Although the District Review was attended by all of the DSMs in the West Area and even though Plaintiff was the most junior of all the DSMs (and the only minority/African American in the West), Plaintiff was scheduled by Smuda and West to present first in the District Review process. The District Review process required the DSM to present their business and analysis through use of a uniform template.

34.

Plaintiff's presentation had barely begun and he was on his second slide when he was cut off by the "leadership team" of Smuda, Stoffel, West and Briselli who all loudly, harshly and severely criticized and belittled Plaintiff in front of over 35 of his peers and subordinates. This was an extremely upsetting, discouraging, humiliating, hostile and harassing experience for Plaintiff.

///

///

**7 – COMPLAINT**

35.

After the meeting Plaintiff complained about the obvious and discriminatory mistreatment of him by the individually named defendants. Plaintiff went to his new supervisor, Mike West with concerns over the harassing treatment. Though West had participated in the harassment, Plaintiff didn't know where else to turn. Plaintiff told West directly that he felt Smuda was discriminating against him due to his race.

36.

Instead of taking any type of corrective action at all, West told Plaintiff that he should have remained quiet during the criticism at the meeting and told him to talk to Smuda, one of the worst offenders at the meeting.

37.

When Plaintiff approached Smuda about his concerns of obviously racially motivated discriminatory treatment, Smuda called Plaintiff a "pussy" and said that Plaintiff sat on his "ass" instead of stepping up, which was followed by further loud insults and name calling.

38.

Plaintiff complained to Haskell in Human Resources regarding the discriminatory treatment received by Plaintiff at the hands of West and Smuda. From that point forward Hershey's required that a senior HR representative attend the District Reviews but took no corrective action with West or Smuda or made any efforts to stop the harassment from occurring to Plaintiff directly again.

///

///

39.

Under Plaintiff's leadership, the Seattle District sales soared and Plaintiff's hard work and efforts were obvious from several objective measures. Objectively, Plaintiff's forward advancement and promotion within the company should have been a given but for the continued discriminatory practices of Hershey's and its management staff.

40.

In late 2007 or early 2008 Plaintiff's complicity was sought in another act of discrimination, this time against Joe Mireles who was a Hispanic employee that reported to Plaintiff directly. Mireles was an excellent employee who deserved promotion and applied for a District Sales Supervisor position in Alabama. The hiring DSM from Alabama, Chris Kinnard, called Plaintiff ecstatic about Mireles's performance on a telephone interview and said he was a leading candidate for the job and who was guaranteed an in person interview in Alabama. Plaintiff so informed Mireles and advised him to book his flight for the in person interview.

41.

However, when Stoffel learned that Mireles was Hispanic, Stoffel instructed that the hiring process for Mireles be discontinued on the basis that he had not completed his Bachelor's degree. This reason was obviously a pretext for his discriminatory purposes in not wanting to promote Mireles because others, including James Bode, were promoted four levels higher than this without a completed Bachelor's degree. Based on Stoffel's instructions, Kinnard asked Plaintiff to call Mireles and tell him not to come for the interview. Plaintiff refused.

9 – **COMPLAINT**

42.

Trying to prevent others from facing the similar discriminatory treatment that he had received, Plaintiff immediately contacted Sharon Reed, a Hershey appointed third party legal consultant and employee advocate. Plaintiff reported what had occurred and Ms. Reed said she would forward the incident for investigation. After Plaintiff's complaint to Ms. Reed, Mireles was then allowed to move one more step forward in the interview process, but he was not hired.

43.

Months later, Plaintiff applied for a position as "Category Development Manager." He was well qualified for the position, but it was given to a Caucasian "intern" who was far below Plaintiff's position with the company and who had nowhere close to Plaintiff's credentials.

44.

Soon thereafter, Plaintiff applied for a position as Customer Sales Executive in Southern California. Stoffel was the lead hiring authority for this position. Having just recently challenged Stoffel's request regarding Mireles and complained about Stoffel's discriminatory hiring practices, Plaintiff once again was retaliated against and not promoted. Instead, Stoffel gave the position to a white male who had less tenure and fewer academic credentials.

45.

Plaintiff complained to Mark Palin in Human Resources about this continued pattern and practice of racial discrimination. Instead of taking corrective action, Palin suggested that Plaintiff find another job.

46.

But Plaintiff refused to be run out of the company and applied for a position as DSM in San Antonio, Texas. He was now one of the top performing DSMs in the country and had four years managerial experience with Hershey's, as well as being fluent in Spanish, a skill very advantageous to the DSM position in Texas. Nonetheless, Plaintiff was denied the position and the job was given to a Caucasian male, Brandon Mayer, who had no managerial experience and less overall qualifications.

47.

The Director of HR, Ms. Haskell, apologized again to Plaintiff for this continuing injustice and informed Plaintiff that she would go to the extraordinary length of placing Plaintiff's career development on Smuda's yearly performance evaluation. Unfortunately, Haskell was terminated or retired in 2009, which allowed the discrimination and retaliation Plaintiff had been fighting for years to gain the upper hand and create a work environment that was intolerable in 2010.

48.

Being continually discriminated against by denials of promotion after promotion, Plaintiff was anxious to develop his career in any way he could. In that endeavor, Plaintiff accepted a new position in a "development role" as a Customer Sales Executive in the West area. This position was presented to him as a promotion to a higher corporate position. It being a new position, he was repeatedly assured that he would be fully trained and supported by Hershey's and that it would be positive for his career advancement.

49.

Despite these assurances, Plaintiff encountered barriers to success rather than the support and training he had been promised. It quickly became clear that he was moved into this position under West and Davis so he could be forced out of the company. He was held to a much higher performance standard than other similarly situated employees.

50.

Not long after taking the position of the CSE Plaintiff learned that his predecessor, Adam Stonfer, had been falsifying documents and violating several company policies that had created unrealistic customer expectations. Plaintiff repeatedly informed his supervisor Davis of these discoveries and requested help in how to handle the situation. Davis took no action against Stonfer saying that he "liked him" and told Plaintiff to just leave it in the past and move forward.

51.

Plaintiff continued to make every possible effort to succeed in this position and modify client and customer expectations in a way that was compliant with all Hershey's policies. Regardless, the discrimination so ingrained in Hershey's management's practices, became quite clear in the summer of 2010, when, at the National Sales Meeting, Smuda called Plaintiff a "nigger" in the presence of other people. It was offensive, repulsive and direct evidence of discrimination against Plaintiff.

52.

Plaintiff complained about this outrageous and unacceptable name-calling and discrimination to both West and Davis. Rather than addressing it with Smuda, Hershey's retaliated against Plaintiff on August 10, 2010, by putting him on a "ninety day

development plan" at which time West suggested that perhaps he should look for another job "if Hershey is not for you."

53.

Sensing the clear retaliatory motive by Hershey, Plaintiff refused to sign the plan and instead complained to Senior Human Resources Representative Jan Galloway that the development plan was unwarranted, discriminatory and in retaliation for multiple complaints of discrimination he had made in the past. Galloway said she would review the files and his history of discrimination complaints and that she would "investigate" the lack of justification for the performance plan.

54.

However, in a follow up call to Plaintiff from Galloway she tried to shift focus instead onto some of Plaintiff's charges on the corporate credit card. She made no reference to her alleged "investigation" into Plaintiff's discrimination complaints.

55.

Plaintiff's hope that a real investigation into the pervasive and ongoing harassment at Hershey's would take place was quickly quashed. Years of discrimination and retaliation against Plaintiff had created a work environment so offensive and hostile that it interfered with the Plaintiff's ability to perform his assigned duties.

56.

Due to the stress of Plaintiff's work environment, Plaintiff had no other choice for his health to take leave through the Family Medical Leave Act beginning on August 30, 2010.

57.

Plaintiff's psychiatrist advised him not to return to the hostile and offensive work environment that he had endured for so long and Plaintiff was constructively discharged on December 20, 2010.

58.

The continuing course of defendant's conduct as set forth more specifically in the paragraphs above, has proximately caused damage to plaintiff by increased inconvenience and expense in performing his assigned duties, by depriving plaintiff of opportunities for professional advancement and higher pay, by subjecting plaintiff to humiliation and emotional distress, by damaging plaintiff's personal reputation and by adversely affecting plaintiff's earning capacity.

59.

## FIRST CLAIM FOR RELIEF

## RACIAL DISCRIMINATION

### Title VII of the Civil Rights Act of 1964 – 42 U.S.C. § 2000e-2

### (Against Defendant Hershey's)

Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-58 above as though set forth at length herein.

60.

Defendant has discriminated against plaintiff in the terms and conditions of plaintiff's employment because of plaintiff's race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e-2.

61.

Plaintiff is an African-American male and during his employment with Defendant Hershey's was a member of a class protected under Title VII against race based discrimination by his employer, Defendant Hershey's, and/or its supervisory personnel.

62.

At all relevant times, Plaintiff fully, adequately and completely performed all of the functions, duties and responsibilities of his employment with Defendant Hershey's.

63.

As a result of Defendant Hershey's' above stated actions, Plaintiff was unjustly and discriminatorily deprived of equal employment opportunities because of his race including specific denials of a promotion. Upon information and belief, Plaintiff's race was either the sole or motivating factor in defendant's decision not to promote the Plaintiff.

64.

The continuing course of defendant's conduct as set forth more specifically in the paragraphs above, has proximately caused economic damages including but not limited to back pay, which will accrue through to trial, front pay, bonuses, health insurance and retirement benefits, use of a company car, and other employment related benefits in an amount to be specifically determined at trial but no more than $750,000.

65.

Plaintiff is entitled to non-economic damages due to defendant's depriving plaintiff of opportunities for professional advancement and higher pay, by subjecting plaintiff to humiliation and emotional distress, by damaging plaintiff's personal

reputation and by adversely affecting plaintiff's future earning capacity in an amount specifically to be determined at trial but not to exceed $1,500,000 plus reasonable attorney's fees and costs.

66.

Because the defendant's extreme and outrageous conduct towards Plaintiff was improperly motivated, intentional, willful and wanton, Plaintiff is entitled to punitive damages and intends to seek to amend his complaint at a later date to seek such damages.

**SECOND CLAIM FOR RELIEF**

**RACIAL DISCRIMINATION - CONSTRUCTIVE DISCHARGE**

**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e2**

**(Against Defendant Hershey's)**

67.

Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-66 above as though set forth at length herein.

68.

Defendants have discriminated against plaintiff in the terms and conditions of plaintiff's employment because of plaintiff's race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

69.

Defendants' actions were so frequent and severe that it created a hostile and offensive work environment and caused plaintiff's constructive discharge from Hershey's on or about December 20, 2010.

70.

The continuing course of defendant's conduct as set forth more specifically in the paragraphs above, has proximately caused economic damages including but not limited to back pay, which will accrue through to trial, front pay, bonuses, health insurance and retirement benefits, use of a company car, and other employment related benefits in an amount to be specifically determined at trial but no more than $750,000.

71.

Plaintiff is entitled to non-economic damages due to defendant's depriving plaintiff of opportunities for professional advancement and higher pay, by subjecting plaintiff to humiliation and emotional distress, by damaging plaintiff's personal reputation and by adversely affecting plaintiff's future earning capacity in an amount specifically to be determined at trial but not to exceed $1,500,000 plus reasonable attorney's fees and costs.

### THIRD CLAIM FOR RELIEF

### RACE DISCRIMINATION - HOSTILE WORK ENVIRONMENT

### (Pursuant to the Civil Rights Act of 1964 and 1991

### Against Defendants Pell, Smuda, Stoffel, West)

72.

Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-72 above as though set forth at length herein.

///

///

///

17 – **COMPLAINT**

73.

Defendants have discriminated against plaintiff in the terms and conditions of plaintiff's employment because of plaintiff's race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

74.

Plaintiff was subjected to unwelcome racial slurs, insults, jokes, verbal comments, intimidation of a racial nature, and other verbal conduct of a racially discriminatory nature that was sufficiently severe and pervasive that it created a hostile and offensive work environment.

75.

A reasonable man in the plaintiff's circumstances would consider the working environment to be abusive or hostile.

76.

The continuing course of defendant's conduct as set forth more specifically in the paragraphs above, has proximately caused economic damages including but not limited to back pay, which will accrue through to trial, front pay, bonuses, health insurance and retirement benefits, use of a company car, and other employment related benefits in an amount to be specifically determined at trial but no more than $750,000.

77.

Plaintiff is entitled to non-economic damages due to defendant's depriving plaintiff of opportunities for professional advancement and higher pay, by subjecting plaintiff to humiliation and emotional distress, by damaging plaintiff's personal reputation and by adversely affecting plaintiff's future earning capacity in an amount

18 – **COMPLAINT**

specifically to be determined at trial but not to exceed $1,500,000 plus reasonable attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF

## EMPLOYMENT DISCRIMINATION – RETALIATION

## (Pursuant to Title VII Civil Rights Act)

## (Against All Defendants)

78.

Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-77 above as though set forth at length herein.

79.

Defendants have discriminated against plaintiff in the terms and conditions of plaintiff's employment because of plaintiff's race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

80.

Plaintiff is an African-American male and during his employment with Defendant Hershey's was a member of a class protected under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, against race based discrimination by his employer, Defendant Hershey's, or its supervisory personnel.

81.

At all relevant times, Plaintiff fully, adequately and completely performed all of the functions, duties and responsibilities of his employment with Defendant Hershey's.

82.

As a result of Defendant Hershey's' above stated actions, Plaintiff was unjustly and discriminatorily retaliated against by Hershey's in denials of several promotions due to his complaints of race discrimination.

83.

The continuing course of defendant's conduct as set forth more specifically in the paragraphs above, has proximately caused economic damages including but not limited to back pay, which will accrue through to trial, front pay, bonuses, health insurance and retirement benefits, use of a company car, and other employment related benefits in an amount to be specifically determined at trial but no more than $750,000.

84.

Plaintiff is entitled to non-economic damages due to defendant's depriving plaintiff of opportunities for professional advancement and higher pay, by subjecting plaintiff to humiliation and emotional distress, by damaging plaintiff's personal reputation and by adversely affecting plaintiff's future earning capacity in an amount specifically to be determined at trial but not to exceed $1,500,000 plus reasonable attorney's fees and costs.

///

///

///

///

///

///

**FIFTH CLAIM FOR RELIEF**

**EMPLOYMENT DISCRIMINATION – DISPARATE TREATMENT**

**(Pursuant to RCW 49.60.180(3)**

**(Against All Defendants)**

85.

Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-84 above as though set forth at length herein.

86.

Defendants have discriminated against plaintiff in the terms and conditions of plaintiff's employment because of plaintiff's race in violation of Revised Code of Washington 49.60.180(3) in failing to promote plaintiff because of his race.

87.

Plaintiff is an African-American male and during his employment with Defendant Hershey's was a member of a class protected under RCW 49.60.180(3) against race based discrimination by his employer, Defendant Hershey's, or its supervisory personnel.

88.

At all relevant times, Plaintiff fully, adequately and completely performed all of the functions, duties and responsibilities of his employment with Defendant Hershey's.

89.

The continuing course of defendant's conduct as set forth more specifically in the paragraphs above, has proximately caused economic damages including but not limited to back pay, which will accrue through to trial, front pay, bonuses, health insurance and

retirement benefits, use of a company car, and other employment related benefits in an amount to be specifically determined at trial but no more than $750,000.

90.

Plaintiff is entitled to non-economic damages due to defendant's depriving plaintiff of opportunities for professional advancement and higher pay, by subjecting plaintiff to humiliation and emotional distress, by damaging plaintiff's personal reputation and by adversely affecting plaintiff's future earning capacity in an amount specifically to be determined at trial but not to exceed $1,500,000 plus reasonable attorney's fees and costs.

91.

Because the defendants' extreme and outrageous conduct towards Plaintiff was improperly motivated, and was intentional, willful and wanton, Plaintiff is entitled to punitive damages and intends to seek to amend its complaint at a later date to seek such damages.

92.

## SIXTH CLAIM FOR RELIEF

## EMPLOYMENT DISCRIMINATION – HOSTILE WORK ENVIRONMENT

### Pursuant to RCW 49.60.180(3)

### (Against All Defendants)

Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-91 above as though set forth at length herein.

22 – **COMPLAINT**

93.

Defendants have discriminated against plaintiff in the terms and conditions of plaintiff's employment because of plaintiff's race in violation of RCW 49.60.180(3).

94.

Plaintiff was subjected to unwelcome racial slurs, insults, jokes, verbal comments, intimidation of a racial nature, and other verbal conduct of a racially discriminatory nature that was sufficiently severe and pervasive that it created a hostile and offensive work environment.

95.

A reasonable man in the plaintiff's circumstances would consider the working environment to be abusive or hostile.

96.

The continuing course of defendant's conduct as set forth more specifically in the paragraphs above, has proximately caused economic damages including but not limited to back pay, which will accrue through to trial, front pay, bonuses, health insurance and retirement benefits, use of a company car, and other employment related benefits in an amount to be specifically determined at trial but no more than $750,000.

97.

Plaintiff is entitled to non-economic damages due to defendant's depriving plaintiff of opportunities for professional advancement and higher pay, by subjecting plaintiff to humiliation and emotional distress, by damaging plaintiff's personal reputation and by adversely affecting plaintiff's future earning capacity in an amount

specifically to be determined at trial but not to exceed $1,500,000 plus reasonable attorney's fees and costs.

## SEVENTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Defendants Pell, Smuda, Stoffel, West)

98.

Plaintiff re-alleges paragraphs 1-97 above as though fully set forth herein.

99.

By intentional outrageous conduct with the intent to cause plaintiff extreme emotional distress, which did cause extreme emotional distress, to plaintiff's substantial damage, Defendants Pell, Smuda, Stoffel and West tortuously intentionally inflicted emotional distress on plaintiff, for which they are liable for damages under Washington law.

100.

The above-named defendants' actions towards Plaintiff as set forth above and in creating such a hostile and offensive work environment as to force Plaintiff to leave his employment, acted intentionally, recklessly and/or with deliberate indifference to a substantial probability that severe emotional distress would result to Plaintiff.

101.

The above-named defendants' actions towards Plaintiff as set forth above are evidence of a pattern of race discrimination which further constitutes extreme and outrageous conduct.

102.

The extreme and outrageous conduct of the above-named defendants toward Plaintiff was done in a willful and wanton manner, and constituted a disregard for the rights and well-being of Plaintiff.

103.

As a direct and proximate result of the above-named defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress.

104.

Because the defendants' extreme and outrageous conduct towards Plaintiff was improperly motivated, and was intentional, willful and wanton, Plaintiff is entitled to punitive damages and intends to seek to amend its complaint at a later date to seek such damages.

105.

**PRAYER FOR RELIEF**

Accordingly, plaintiff prays that defendants appear and answer in this action, and that upon the evidence, finding the jury and applicable law, the court enter judgment:

a. For economic damages in an amount to be determined at trial but not to exceed $750,000.

b. Non-economic damages in an amount to be determined at trial for emotional distress and mental anguish and impairment of the quality of life not to exceed $1,500,000.

c. A determination and award of all reasonable attorneys' fees and costs including but not limited to all expenses as provided in Title VII of the Civil

25 – **COMPLAINT**

Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-5(k) and as

provided under state law;

d.  Prejudgment and post-judgment interest as provided by law;

e.  All other relief to which plaintiff is entitled under the law or in equity.

WHEREFORE, Plaintiff prays for judgment in the amount of $2,250,000 together

with his reasonable costs and attorney's fees.


DATED:  February 22, 2013                 HITT HILLER MONFILS WILLIAMS LLP


                                    By:   /s/ Shelly M. Damore
                                          Shelly M. Damore, WSB No. 33833
                                          Attorneys for Plaintiff